| Silverline Servs. Inc. v PDC Constr., LLC |
|:---:|
| 2024 NY Slip Op 30840(U) |
| March 15, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 501227/2022 |
| Judge: Francois A. Rivera |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 52 of
the Supreme Court of the
State of New York, held in
and for the County of Kings,
at the Courthouse, at Civic
Center, Brooklyn, New York,
on the 15th day of March
2024

HONORABLE FRANCOIS A. RIVERA

--------------------------------------------------------------X

SILVERLINE SERVICES, INC.,

                    Plaintiff,

-against-

PDC CONSTRUCTION, LLC and
PAUL A DORAN

                    Defendants.

--------------------------------------------------------------X

**DECISION & ORDER**

Index No. 501227/2022

Recitation in accordance with CPLR 2219 (a) of the papers considered on the notice of motion filed by plaintiff Silverline Services, Inc. (hereinafter Silverline or plaintiff) on March 22, 2023, under motion sequence one for an order pursuant to CPLR 3212 granting summary judgment in its favor on the issue of liability on the claims asserted in its complaint against the defendants PDC Construction, LLC (hereinafter the corporate defendant) and Paul A. Doran (hereinafter the guarantor) (collectively as defendants).

-Notice of Motion
-Affidavit in Support
-Affirmation in Support
      Exhibits A to F
-Statement of Material Facts

**BACKGROUND**

On January 13, 2022, Silverline commenced the instant action for, *inter alia*,

breach of contract by filing a summons and complaint with the Kings County Clerk's

[* 1]

office (KCCO). On February 23, 2022, the defendants joined issue by interposing and filing a joint answer with the KCCO. The complaint alleges forty-seven allegations of fact in support of three causes of action, namely, breach of contract, breach of a personal guaranty agreement, and unjust enrichment.

The complaint alleges the following salient facts, among others. On May 28, 2021, plaintiff and defendants entered into an agreement ("Agreement 1") whereby plaintiff agreed to purchase the company defendant's future receivables in the amount of $7,295. On July 14, 2021, Agreement 1 was amended so that plaintiff would purchase the company defendant's future receivables having an agreed-upon value of $14,970. The purchase price for these receivables was $10,000.

Pursuant to Agreement 1, company defendant agreed to have one bank account approved by plaintiff (the "Bank Account") from which company defendant authorized plaintiff to make daily ACH withdrawals until $14,970 was fully paid to plaintiff.

In addition, guarantor agreed to guarantee all amounts owed to plaintiff from company defendant upon a breach in performance by company defendant. Plaintiff remitted the purchase price for the future receivables to company defendant as agreed. Company defendant stopped making its payments to plaintiff and otherwise breached Agreement 1 by intentionally impeding and preventing plaintiff from making the agreed-upon ACH withdrawals from the Bank Account while conducting regular business operations.

[* 2]

Company defendant made payments totaling $11,880, leaving a balance of $3,090. Despite due demand, company defendant has failed to pay the amounts due and owing by company defendant to plaintiff under Agreement 1. There remains a balance due and owing to Plaintiff on Agreement 1 in the amount of $5,590, plus interest, costs, disbursements, and attorney's fees.

On or about August 19, 2021, plaintiff and defendants entered into an agreement (Agreement 2) whereby plaintiff agreed to purchase all rights to company defendant's future receivables having an agreed-upon value of $61,809.77. The purchase price for these receivables was $41,234. Agreement 2 was structured so that instead of plaintiff funding the entire purchase price at the outset, it instead funded defendant in weekly increments. The total weekly funding was $15,906.75 to purchase future receivables of $23,844.22.[1]

Pursuant to Agreement 2, company defendant agreed to have one bank account approved by plaintiff (the "Bank Account")[2] from which company defendant authorized plaintiff to make daily ACH withdrawals until $23,844.22 was fully paid to plaintiff. Guarantor agreed to guarantee all amounts owed to plaintiff from company defendant upon a breach in performance by company defendant. Plaintiff remitted the purchase price for the future receivables to company defendant as agreed.

---

[1] The alleged facts regarding Agreement 2 seem internally inconsistent. One cannot determine the total value of the future receivables purchased or the agreed-upon purchase price for same.
[2] It is unclear from the complaint whether the Bank Account used for Agreement 2 was the same or different from the Bank Account used under Agreement 1.

[* 3]

Company defendant stopped making its payments to plaintiff and otherwise breached Agreement 2 by intentionally impeding and preventing plaintiff from making the agreed-upon ACH withdrawals from the Bank Account while conducting regular business operations. Company defendant made payments totaling $11,875, leaving a balance of $11,969.22.

Despite due demand, company defendant has failed to pay the amounts due and owing by company defendant to plaintiff under Agreement 2. Guarantor is responsible for all amounts incurred because of any default of the Company Defendant. There remains a balance due and owing to plaintiff on Agreement 2 in the amount of $14,469.22, plus interest, costs, disbursements, and attorney's fees.

## LAW AND APPLICATION

There is no opposition to the instant motion. However, "[a] summary judgment motion should not be granted merely because the party against whom judgment is sought failed to submit papers in opposition to the motion, (i.e., 'defaulted')" (*Liberty Taxi Mgt., Inc. v Gincherman*, 32 AD3d 276, 278 n [1st Dept 2006], citing *Vermont Teddy Bear Co., v 1-800 Beargram Co.*, 373 F3d 241, 244 [2d Cir 2004] ["the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the ... court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law"]; *see Cugini v System Lumber Co., Inc.*, 111 AD2d 114, 115 [1st Dept 1985]).

[* 4]

It is well established that summary judgment may be granted only when no triable issue of fact exists (*Alvarez v Prospect Hospital*, 32 AD3d 276 [1986]). The burden is upon the moving party to make a prima facie showing that he or she is entitled to summary judgment as a matter of law by presenting evidence in admissible form demonstrating the absence of any material issues of fact (*Giuffrida v Citibank*, 100 NY2d 72, 81 [2003]).

A failure to make that showing requires the denial of the summary judgment motion, regardless of the adequacy of the opposing papers (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993]). If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact (*Alvarez*, 68 NY2d at 324).

Pursuant to CPLR 3212 (b), a court will grant a motion for summary judgment upon a determination that the movant's papers justify holding, as a matter of law, that there is no defense to the cause of action or that the cause of action or defense has no merit. Furthermore, all the evidence must be viewed in the light most favorable to the opponent of the motion (*Marine Midland Bank v Dino & Artie's Automatic Transmission Co.*, 168 AD2d 610 [2d Dept 1990]).

The essential elements of a cause of action to recover damages for breach of contract are "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach" (*Cruz v Cruz*, 213 AD3d 805, 807 [2d Dept 2023]).

[* 5]

"The elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Sarker v Das*, 203 AD3d 973, 975 [2nd Dept 2022], citing *Financial Assistance, Inc. v Graham*, 191 AD3d 952, 956 [2d Dept 2021]).

A plaintiff's cause of action for unjust enrichment may not be maintained if a valid contract governing the subject matter exists. Under such circumstances, recovery in quasi contract for events arising out of the same subject matter are generally precluded (*see CSI Group, LLP v Harper*, 153 AD3d 1314, 1317 [2d Dept 2017], citing *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 23 [2005]; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]). Silverline's claim for breach of contract is undisputedly based on two merchant agreements. Consequently, Silverline may not maintain a claim for unjust enrichment.

In the case at bar, the only sworn testimony submitted by Silverline in support of the motion was an affirmation of Jeffrey Zachter, its counsel (hereinafter Zachter), and an affidavit of Shmuel Brummel (hereinafter Brummel). Zachter's affirmation contends that the facts in support of the motion are contained in the affidavit of Brummel.

Zachter's affirmation demonstrates no personal knowledge of any of the transactional facts alleged in the complaint. "An attorney's affirmation that is not based upon personal knowledge is of no probative or evidentiary significance" (*Nerayoff v*

[* 6]

*Khorshad*, 168 AD3d 866, 867 [2d Dept 2019], citing *Warrington v Ryder Truck Rental, Inc.*, 35 AD3d 455, 456 [2d Dept 2006]).

Brummel's affidavit did not clarify the apparent inconsistencies noted in Agreement 2. Brummel's affidavit also did not clarify whether the bank accounts designated for Agreement 1 or Agreement 2 were the same or different bank accounts. Brummel's affidavit is used to authenticate the Agreements which were allegedly breached by the defendants. Brummel averred that he is the director of Risk Management for Silverline and, as such, has personal knowledge of its business practices and procedures. He further averred that the factual allegations proffered in support of the motion for summary judgment are derived from his review of the plaintiff's business records. He then referred to the documents attached to the motion, namely, the Agreements and the documents denominated as merchant balance statements for each one of the agreements.

It is noted that Brummel did not aver that he was a signatory to the Agreement or that he participated in the execution of same. Furthermore, he did not submit any documentary support of the amount Silverline purportedly provided to the defendants. This fact alone raises material issues of fact regarding the plaintiff's performance under the Agreements. Consequently, the plaintiff cannot make a prima facie showing of entitlement to judgment on its claims for breach of the Agreements or of the guarantees.

Brummel refers to the merchant balance statements, annexed as exhibits B and D to his affidavit, as proof of the defendants' default. "A proper foundation for the

[* 7]

admission of a business record must be provided by someone with personal knowledge of the maker's business practices and procedures" (*Citibank, N.A. v Cabrera*, 130 AD3d 861, 861 [2d Dept 2015]). Generally, "the mere filing of papers received from other entities, even if they are retained in the regular course of business, is insufficient to qualify the documents as business records" (*Bank of N.Y. Mellon v Gordon*, 171 AD3d 197, 209 [2d Dept 2019] quoting *Standard Textile Co. v National Equip. Rental*, 80 Ad2d 911, 911 [1981]). "However, such records may be admitted into evidence if the recipient can establish personal knowledge of the maker's business practices and procedures or establish that the records provided by the maker were incorporated into the recipient's own records and routinely relied upon by the recipient in its own business" (*Bank of N.Y. Mellon*, 171 Ad3d at 209).

Here, the merchant balance statements are submitted without explaining their source, or their meaning. It is neither self-explanatory nor self-admitting and there was an insufficient foundation for its admission as a business record. "[I]t is the business record itself, not the foundational affidavit, that serves as proof of the matter asserted" (*Citibank, N.A. v Potente*, 210 AD3d 861, 862 [2d Dept 2022], quoting *Bank of N.Y. Mellon*, 171 Ad3d at 205). Accordingly, evidence of the contents of business records is admissible only where the records themselves are introduced. Without their introduction, a witness's testimony as to the contents of the records is inadmissible hearsay (*see Bank of N.Y. Mellon*, 171 AD3d at 198). In sum, Silverline has failed to make a prima facie showing of

[* 8]

entitlement to summary judgment on any of the claims it has asserted against the defendants.

**CONCLUSION**

The motion by plaintiff Silverline Services, Inc., for an order pursuant to CPLR 3212 granting summary judgment in its favor on the issue of liability on the claims asserted against the defendants PDC Construction, LLC and Paul A. Doran is denied.

A copy of this decision and order, along with notice of entry, shall be served upon defendants and filed with the Court within 20 days of entry.

The foregoing constitutes the decision and order of the Court.

ENTER:

_____
J.S.C.
HON. FRANCOIS A. RIVERA